## ALFORD *v.* WILSON.

*(Circuit Court, D. Connecticut.　April 29, 1884.)*

CONTRACT—FACTS OF CASE REVIEWED.

    Where a letter was written to the defendant proposing that as a part of a contract he should agree to furnish $15,000 in stock, and requesting him to signify his acceptance of the terms by telegraphing back " proposition as to fifteen thousand stock accepted," and the defendant telegraphed " I will provide for the fifteen thousand stock," intending the dispatch to be regarded as an acceptance, *held*, on the facts found by the court, that a refusal to furnish the stock rendered him liable.

    SHIPMAN, J.　This is an action at law which was tried by the court, the parties having, by a duly signed written stipulation, waived a trial by jury.　Upon said trial so had to the court, both parties appeared, and having been fully heard by their counsel and with their witnesses, I find the following facts to have been proved and to be true:

    In June, 1882, the Wilson Sewing-machine Company of Chicago was a corporation for the manufacture and sale of Wilson sewing-machines, located in Chicago, and theretofore incorporated under the laws of the state of Illinois, with a capital stock of $500,000.　The defendant, a citizen of Illinois, was the president of the company, and owned all its stock except 40 shares.　The plaintiff was at the same time living and doing business in the city of New York, under a contract with said company, dated January 4, 1882, by which he had the exclusive power of selling the said machines in the states of New York, Connecticut, New Jersey, Delaware, Maryland, and Virginia, and the District of Columbia, and specified portions of Pennsylvania and North Carolina, and by which the company agreed to sell to him its machines at specified prices.　In June, 1882, the defendant came to New York city for the purpose of collecting or settling the plaintiff's debt to said company of about $20,000.　After negotiations with the plaintiff and his bondsmen, said contract was terminated by mutual consent on June 23, 1882, and 16 notes for said indebtedness were given by the plaintiff to said company, each for the sum of $1,250, each four of said notes being also signed by one of the four persons who had been his sureties for the fulfillment of said contract.　Thereupon, on said day or the next, conversation and negotiations were had between the defendant on the one part and the plaintiff, and George A. Delaree, a broker, on the other part, in regard to the formation of a joint-stock company in the city of New York, with a capital of $50,000 for the sale of said sewing-machines in the territory formerly occupied by the defendant.　It was understood that the plaintiff and said Delaree should proceed and endeavor to form such a company, but as the parties differ in regard to the terms upon which the services were to be rendered, and as those terms are not necessary to the determination of this case, I make no finding upon that point.　The plaintiff and said Delaree say that the defendant was to give or furnish each of them $5,000 paid-up stock in this company.　The defendant says that he simply agreed to pay for the legal expenses of organizing such a company, provided they did not exceed $50.

    About June 24th the defendant returned to Chicago, and the other two persons made some attempt to start this proposed corporation.　The defendant, in a few days, conferred with James H. Sheldon, the general manager of the company, as to the expediency of forming a company at the east for the purchase of the machinery, tools, fixtures, and good-will of the business of said Chicago corporation.　This necessarily involved the abandonment of the en-

terprise in which the plaintiff and Delaree were engaged. The result of this conference was that it was arranged between the defendant and said Sheldon that the latter, he being still in the employment of the Chicago company and upon a salary, should go to New York city for the purpose of organizing this new company, and should see the plaintiff and said Delaree, and see if they would co-operate and assist in this enterprise and abandon the other. No definite plan for the new company was agreed upon between the defendant and said Sheldon. The general plan suggested by the defendant was to have a company with a nominal capital of $1,000,000, and with a paid-up capital of $250,000 or $300,000, and power in the company to issue and sell the residue of the unpaid capital from time to time. The defendant said that he would take a reasonable amount of the stock, and, if necessary, the amount of $50,000. He told said Sheldon that if the project was carried out he would recommend that stock to the amount of $10,000 or $15,000 from this residue of stock should be given by the new company to Sheldon, which stock, when so given, would be paid up and non-assessable. The business of negotiating with the plaintiff and Delaree was left to the judgment of said Sheldon, without definite and exact instructions. Said Sheldon reached New York city on July 4, 1882, and had two interviews with the plaintiff and Delaree on July 6th, in which he proposed to them to join him in the new plan and discontinue their efforts for the organization of a company for the sale of the machines. He stated the outline of the plan as hereinbefore given, and suggested that in the new company the plaintiff might be secretary and treasurer, and Delaree might have a position for the establishment of agencies, and that he hoped to get the position of general manager, and that the attainment of these positions would justify the expenditure of labor to get up the company. On July 7th Sheldon met the plaintiff and Delaree again. They said that they did not feel that they had a tangible enough future in the proposed company; that while the positions which had been named were well enough, there was a lack of certainty about the thing, and they wanted something more definite in the way of compensation. They virtually declined to engage in efforts for the new company upon the mere hope or promise of position in the company, and they required a promise of paid-up stock. The suggestion was made by Delaree that the defendant could ask $15,000 more for "the plant," as it was termed, and take more stock than had been proposed, and that from this additional stock a compensation in stock could be furnished to the three for their services. The result of the conversation was that a letter should be written by Sheldon to the defendant on the subject, with a request to reply by telegraph, and if the reply which it was expected would be received by the following Monday was favorable, Delaree would immediately accompany Sheldon to Connecticut upon the business of the company, and Alford would also furnish his aid, influence, and services in furtherance of the enterprise. The following letter was thereupon written by Sheldon, and was sent to and received by the defendant:

"NEW YORK, July 7, 1882.

"*To W. G. Wilson, Esq.*—DEAR SIR: There now seems to be a complete understanding between Delaree, Alford, and myself, and to carry out the idea they have for compensation for Alford's built-up influence, Delaree's services, etc., it is proposed that you add $15,000 to the amount you will take in stock,—the amount has not been indicated yet what that is,—which $15,000 in stock is to be issued to Alford, Delaree, and myself, each $5,000. If you will telegraph me on Monday morning saying, proposition as to fifteen thousand stock accepted, it will satisfy all parties, and the effort will be made with a will. We will have all the information by that time which will enable the effort to go forward without interruption, and I think with success.

"Yours truly, J. H. SHELDON.

"P. S. The amount of stock proposed for myself is in keeping with the others, and it is better to have it so as it keeps the idea complete about the origin of the movement. Please have a draft for June salary sent me, and oblige, J. H. S."

On Monday, July 10, 1882, the following telegraphic reply was sent by the defendant to Sheldon, and was shown to the plaintiff and to Delaree, who thereupon declared themselves satisfied and went to work to carry out the new enterprise:

"To J. H. Sheldon, 37 West 14th St.: I will provide for the fifteen thousand stock. W. G. WILSON."

In the foregoing statement I have found only such facts as are admitted to be true by Mr. Sheldon, who is a witness for the defendant, and have made no finding in regard to details, upon which the witnesses differ. I further find that when the defendant received said letter of July 7th, he knew that it was a proposition for him to furnish $5,000 paid-up stock to each one of the three, Alford, Delaree, and Sheldon, in case of the success of the new enterprise; and that, while he was not willing to commit himself to the terms of the proposition, as made, viz., as to the manner in which the stock was to be procured by him, he was willing to promise, and did promise by his telegram, to furnish the $15,000 stock, as requested in the letter, viz., $5,000 paid-up stock to each, and that he intended that the said Delaree and Alford should understand, and knew that they would understand, that the telegram was, in substance, a favorable reply to and acceptance of the proposition contained in said letter of July 7th. The telegram was not a refusal of the proposition, nor was it a promise to do what had not been asked, viz., to furnish unpaid stock, nor was it written to deceive the New York gentlemen, and induce them to believe that it meant something which the writer did not mean, but was an intentional promise to provide or furnish to each of them $5,000 of stock, in case of success, but, intentionally, did not tell how the stock was to be provided, whether by gift from the company or in some other way, but it was to be provided by or through him in some way.

In consideration of this promise, and relying upon it, the plaintiff entered upon the attempt to organize a new company for the purpose proposed by Mr. Sheldon, and the defendant knew or believed that upon such promise he would so enter. Vigorous efforts were made to establish the company at Norwalk and at New Britain, in each of which the plaintiff participated, and in the New Britain effort he was especially active from the fact that he had lived in that city for some years, and knew its inhabitants. Through the newspaper notices of the Norwalk and New Britain efforts the attention of a Wallingford gentleman was called to the proposed enterprise, who took hold of the idea with promptness, and through his intervention the chances of success at Wallingford were brought to the defendant's notice, who sent Mr. Sheldon there, and soon after the company was organized in that town. The plaintiff did not visit Wallingford for the purpose

of helping along the scheme, and did not solicit Wallingford people to take stock, and did not procure any stock to be subscribed in the new company, but he indirectly helped the enterprise by means of his New Britain operations.

The Wilson Sewing-machine Company of Wallingford was formed, with a capital of $300,000. The defendant subscribed for 4,000 shares of $25 each, and paid for the same nominally by his check or draft for $100,000, but really by the tools, machinery, and fixtures of the old company, which were estimated at $100,000. The new company also purchased the merchandise, furniture, and fixtures belonging to the old company, and at its Chicago office. Wallingford people subscribed for $106,600 of the stock of the new company. Sheldon nominally subscribed for $93,400 of said stock for himself, but really subscribed for the defendant, who paid the first installment, and afterwards sold all the stock at par. A certificate for 200 shares of the 4,000 shares which were subscribed and paid for by the defendant was, by his direction, issued to Mr. Sheldon, who paid nothing for it. The changes from the original plan or idea of the defendant in regard to the company were voluntarily made by him, without suggestion to the plaintiff, or to Delaree, or to Sheldon, that his relations to them or his contract with them were changed thereby, or that the company as organized or to be organized was not the company which they undertook to promote, or that the modification of his plan modified his contract with them.

The influence of the plaintiff was valuable to the defendant. Had the plaintiff opposed the scheme, it would have failed. Had he not been actively at work in its behalf, it might have failed, because his position as the New York salesman of the sewing-machines, and his knowledge of the business, gave him facilities for directing the opinions of the people, which were valuable to the success of the plan. The defendant desired to sell the old company's property to a new company at the east. To do this, he knew that it was important to enlist the services of the plaintiff, and the letter of Mr. Sheldon gave the information that in order to obtain that assistance it was necessary to promise to furnish $5,000 in paid-up stock. The defendant made the promise, and obtained thereby the services of the plaintiff,— pecuniary benefit and success. Demand was made by the plaintiff on October 9, 1882, and on October 18, 1882, upon the defendant for said stock. The defendant refused on October 13, 1882. No reply was made to the demand of October 18th. He was able at the time of the demand to comply with it and to furnish to the plaintiff said stock.

The first meeting of the new company was held September 2, 1882. The articles of association were duly published September 9, 1882, and the certificate of organization was filed in the office of the town clerk of Wallingford on September 30, 1882. Said company was duly organized before the date of said demand. The stock of said com-

pany sold at par, and that was its market value at and for three or four months after its organization. There are divers disputed facts between said parties, which I have not referred to, but the testimony of Mr. Sheldon, his letter, and the telegram contain both the undisputed and the vital facts in the case.

In actions for damages upon breach of contract, interest is often a matter of discretion. *Redfield* v. *Ystalyfera Iron Co.* 3 Sup. Ct. Rep. 570. In this case, while the market price of the stock was at par for some months after the organization of the new company, and while the defendant was able to sell his stock at par, I think that was the full price of the stock, and that the seller was pecuniarily fortunate, and that the quantity of the plaintiff's damages from not having received the stock do not call for interest.

Let judgment be entered for the plaintiff for $5,000.